UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| ROBERT T. HOOEY, | CASE NO. 11-CV-2805 (JRT/TNL) |
| Plaintiff, | **REPORT & RECOMMENDATION** |
| v. | |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security | |
| Defendant. | |

Sean M. Quinn, FALSANI, BALMER, PETERSON, QUINN & BEYER, 1200 Alworth Building, 306 West Superior Street, Duluth, MN 55802, for Plaintiff.

David W. Fuller, Assistant United States Attorney, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for Defendant.

## I. INTRODUCTION

Plaintiff Robert T. Hooey brings the present action, disputing Defendant Commissioner of Social Security Michael J. Astrue's ("the Commissioner"[1]) denial of Plaintiff's request for waiver of recovery of overpaid disability benefits. The United States District Court for the District of Minnesota has jurisdiction under the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). This matter is before the Court, United States Magistrate Judge Tony N. Leung, for a report and recommendation to the United

---

[1] Due to the types of issues involved in this case, the Court uses "the Agency" when referring to Plaintiff's interactions with the Social Security Administration prior to the filing of this case and "the Commissioner" when referring to the Social Security Administration's participation in the proceedings before this Court. This delineation is for ease of the reader only. Both designations ultimately refer to Defendant.

States District Court Judge on the parties' cross motions for summary judgment. *See* 28 U.S.C. § 636(b)(1); D. Minn. LR 72.1-2.

Based upon the record and memoranda, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Docket No. 18) be **DENIED** and the Commissioner's Motion for Summary Judgment (Docket No. 21) be **GRANTED**.

## II. BACKGROUND

### A. Procedural Posture

Plaintiff applied for disability insurance benefits in September 1996 and began receiving them in January 1997. (Tr. 14, 46.) In 2000, the Agency contacted Plaintiff twice reminding Plaintiff to inform the Agency about any changes that might affect benefits. (Tr. 16.) On January 21, 2008, the Agency determined that Plaintiff had engaged in substantial gainful activity since January 2005 and therefore Plaintiff was no longer disabled. (Tr. 21-23.) As a result, the Agency concluded that Plaintiff was not entitled to receive benefits after April 2005 and Plaintiff had been overpaid in the amount of $23,333.80. (Tr. 21-23, 41-42.)

On April 7, 2008, Plaintiff requested a waiver to prevent collection of the overpayment. (Tr. 25-32.) On July 2, 2008, the Agency denied the waiver request. (Tr. 38-40.) Plaintiff subsequently requested a hearing by an administrative law judge ("ALJ"). (Tr. 43.)

The ALJ held a hearing on October 21, 2009. (Tr. 138-52.) The ALJ issued his decision on January 20, 2010, finding overpayment of benefits and denying Plaintiff's request for a waiver of repayment. (Tr. 11-17.) On March 1, 2010, Plaintiff requested a

States District Court Judge on the parties' cross motions for summary judgment. *See* 28 U.S.C. § 636(b)(1); D. Minn. LR 72.1-2.

Based upon the record and memoranda, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Docket No. 18) be **DENIED** and the Commissioner's Motion for Summary Judgment (Docket No. 21) be **GRANTED**.

## II. BACKGROUND

### A. Procedural Posture

Plaintiff applied for disability insurance benefits in September 1996 and began receiving them in January 1997. (Tr. 14, 46.) In 2000, the Agency contacted Plaintiff twice reminding Plaintiff to inform the Agency about any changes that might affect benefits. (Tr. 16.) On January 21, 2008, the Agency determined that Plaintiff had engaged in substantial gainful activity since January 2005 and therefore Plaintiff was no longer disabled. (Tr. 21-23.) As a result, the Agency concluded that Plaintiff was not entitled to receive benefits after April 2005 and Plaintiff had been overpaid in the amount of $23,333.80. (Tr. 21-23, 41-42.)

On April 7, 2008, Plaintiff requested a waiver to prevent collection of the overpayment. (Tr. 25-32.) On July 2, 2008, the Agency denied the waiver request. (Tr. 38-40.) Plaintiff subsequently requested a hearing by an administrative law judge ("ALJ"). (Tr. 43.)

The ALJ held a hearing on October 21, 2009. (Tr. 138-52.) The ALJ issued his decision on January 20, 2010, finding overpayment of benefits and denying Plaintiff's request for a waiver of repayment. (Tr. 11-17.) On March 1, 2010, Plaintiff requested a

review of the ALJ's decision. (Tr. 136.) On September 8, 2011, the Agency's Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Agency. (Tr. 3-6.)

Plaintiff filed the present action on December 9, 2011. Plaintiff moved for summary judgment on April 17, 2012, arguing that the ALJ erred in determining that Plaintiff was not without fault in causing the overpayment. (Pl.'s Mem. at 1, Docket No. 18.) On May 31, 2012, the Commissioner filed a cross motion for summary judgment, seeking an order affirming the ALJ's decision. (Def.'s Mem. at 1, Docket No. 21.)

### B. Medical Records

In February 1996, Plaintiff underwent a psychiatric evaluation by Dr. John Glick, a psychiatrist at the Human Development Center. (Tr. 79.) It was determined that Plaintiff had a history of depression, including a suicide attempt in 1986 following his divorce. (Tr. 79.) During the assessment, Plaintiff reported that, in January 1996, he had fleeting suicidal thoughts without a plan, insomnia, decreased weight, and poor concentration. (Tr. 79.) Plaintiff suffered from recurrent major depressive episodes, avoidant personality disorder and possible low or borderline intellectual functioning. (Tr. 80.)

In September 1996, Plaintiff underwent a psychological evaluation by James Luke Psy.D, a psychologist at the Human Development Center. (Tr. 82.) This assessment was based on Plaintiff's medical records, the Wechsler Adult Intelligence Scales[2] ("WAIS")

---

[2] The Wechsler Adult Intelligence Scales is a test to measure intellectual functioning. *Wechsler Scales*, National Center for Biotechnology Information, http://www.ncbi.nlm.nih.gov/mesh?term=%22Wechsler+Scales%22 (last visited Sept. 14, 2012).

and the Wide Range Achievement Test[3] ("WRAT"). (Tr. 82.) The WAIS results indicated that Plaintiff had a verbal IQ of 78, performance IQ of 85, and a full scale IQ of 81, placing Plaintiff in the low average range. (Tr. 83.) Plaintiff's WRAT achievement scores place him in the lowest two percent relative to other adults in his age group. (Tr. 83.) This means that his reading and arithmetic is at a third grade level and his spelling is at a second-grade level. (Tr. 83.) Luke also reported that Plaintiff had difficulty securing and maintaining employment. (Tr. 84.)

Plaintiff subsequently followed up with Dr. Glick every few months between May 2000 and November 2005. (Tr. 85-100.) At his first visit in May 2000, Plaintiff reported that he was "doing well" and not having any problems with his mood. (Tr. 100.) In September 2000, Plaintiff reported that his mood was "good," denied being depressed, and stated that he had a part-time job. (Tr. 99.) In March 2001, Plaintiff reported that he was doing "okay." (Tr. 98.) For these first three visits, Dr. Glick described Plaintiff's mood as "stable." (Tr. 98-100.) In July 2001, Dr. Glick noted that Plaintiff's condition was slightly worse, but that Plaintiff stated that he did not feel depressed. (Tr. 97.) Dr. Glick determined that Plaintiff's recurring major depression was in remission, a diagnosis he maintained through November 2004. (Tr. 87-97.)

In September 2001, Plaintiff reported that his mood was "good" and he was looking to purchase a home. (Tr. 96.) From November 2001 to May 2005, Plaintiff

---

[3] The Wide Range Achievement Test measures basic academic skills including word reading, sentence comprehension, spelling and math computation. The results are based on a representative national sample of over 3,000 individuals who were selected according to a national sampling procedure. *Wide Range Achievement Test 4*, Library of the US Courts of the Seventh Circuit, http://www.lb7.uscourts.gov/documents/ILND/08C6995.pdf (last visited Sept. 14, 2012).

reported that his mood was "good" and that he was "doing well" or "ok." (Tr. 86-95.) At his last visit in November 2005, Plaintiff reported that he was "good," but Dr. Glick noted that Plaintiff was experiencing some depression related to stressors in his life. (Tr. 85.)

### C. Employment History

In high school, Plaintiff primarily attended special education classes. (Tr. 82.) Since graduating, he has worked many different jobs, but has had difficulty maintaining employment. (Tr. 80.)

After being awarded benefits in 1997, Plaintiff held a variety of jobs starting with a position at the Regents of the University of Minnesota Forestry Center. (Tr. 34, 107.) Plaintiff worked as a buildings and grounds keeper for six years, earning at most $3,471 in 2002. (Tr. 34.) In 2003, Plaintiff began working for Miners Inc. (Tr. 33.)

Plaintiff's most substantial and consistent employment has been at Grandma's Inc., where he began working in October 2003. (Tr. 33.) Altogether, Plaintiff made $5,077 in 2003 from his jobs at Regents, Miners and Grandma's. (Tr. 33.) Plaintiff made approximately $6,357 in 2004; $11,878 in 2005; $12,238 in 2006; $17,750 in 2007; and $19,338 in 2008. (Tr. 33.) The increases in Plaintiff's earnings between 2005 and 2007 resulted from a series of raises and promotions. In 2005, he received a raise. (Tr. 118.) In 2006, he received two raises: a merit increase in January and a promotion to assistant supervisor in November. (Tr. 119, 121.) In 2007, he also earned two raises: a promotion to supervisor in April and a merit increase in December. (Tr. 122, 123.)

## III. ANALYSIS

### A. Standard of Review

Review by this Court is limited to a determination of whether the decision of the ALJ is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Murphy v. Sullivan*, 953 F.2d 383, 384 (8th Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quotation omitted). "The substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (quotation omitted).

Moreover, this Court will not reverse the ALJ's decision merely because evidence in the record may exist to support the opposite conclusion. *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994); *see also Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (stating that the ALJ's determination must be affirmed even if substantial evidence would support the opposite finding). Instead, this Court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." *Gavin*, 811 F.2d at 1199. In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact. *Woolf*, 3 F.3d at 1213. If it is possible to reach two inconsistent positions from the evidence, then the ALJ's decision must be affirmed. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

### B. Substantial Gainful Activity

An individual is no longer disabled, and thus no longer entitled to benefits, if he is engaged in substantial gainful activity. 20 C.F.R. § 404.1594(d)(5). Recovery of overpayment will be waived only if it is determined that the overpaid individual is without fault in causing the overpayment and such recovery of the overpayment would defeat the purpose of Title II of the Social Security Act or be against equity or good conscience. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506(a). An overpaid individual will be found to be at fault if the facts show one of the following: the incorrect payment or payments resulted from (1) "[a]n incorrect statement made by the individual which he knew or should have known to be incorrect"; (2) "[f]ailure to furnish information which he knew or should have known to be material"; or (3) "[a]cceptance of a payment which he knew or should have known to be incorrect." 20 C.F.R. § 404.507. Fault is determined by a consideration of all pertinent circumstances, including the individual's age, intelligence, education, and physical and mental condition. *Id*. An individual cannot be relieved of liability solely because the Agency may have been at fault in making the overpayment. *Id*. It is unnecessary to look at whether the overpayment would defeat the purpose of Title II or be against equity or good conscience unless the individual receiving the overpayment is without fault. *See* 42 U.S.C. § 404(b); *Watson v. Sullivan*, 940 F.2d 168, 171 (6th Cir. 1991).

An individual receiving benefits is allowed nine trial work months in a 60-month period before payments end. 42 U.S.C. § 422(c); 20 C.F.R. § 404.1592. These trial months do not need to be continuous. 20 C.F.R. § 404.1592. Once the trial work period

ends, the individual receiving payments is entitled to two additional months of payments regardless of how much is made. 20 C.F.R. § 404.316.

A trial work month is determined by the amount of money made in that month. 20 C.F.R. § 404.1592. A trial work month is any month in which the monthly income of the individual receiving benefits was more than $570 in 2003, $580 in 2004, $590 in 2005, $620 in 2006, and $640 in 2007. *Id.*

After the trial work period, disability payments end if the work activity performed shows an ability to do substantial gainful activity. 20 C.F.R. § 404.1594(d)(5). To determine whether the activity is substantial, the Agency considers the nature of the job duties, the skill and experience needed to do the job and how much the person actually earns. 20 C.F.R. § 404.1572. Work is considered substantial if the amount of money made in a month exceeds a certain threshold. 20 C.F.R. § 404.1574. If the payee's monthly income is more than $800 in 2003, $810 in 2004, $830 in 2005, $860 in 2006, and $900 in 2007, the work is qualified as substantial. *Id.*

Based on Plaintiff's earnings, the Agency determined that Plaintiff had been engaged in substantial gainful activity since January 2005. Because Plaintiff's trial work period ended in January 2005 and grace period ended in March 2005, all subsequent payments were overpayments. (*See* Tr. 22.) There is no dispute that Plaintiff was overpaid.

### C. Determination of Fault

The ALJ's decision that Plaintiff was not without fault was based on Plaintiff's reported mental state from 2003 to 2007, the time in which he was employed; Plaintiff's

monthly income compared to the relevant measure for substantial gainful activity; and the letters sent in 2000 by the Agency, reminding Plaintiff to inform the Agency right away if there are any changes to his income. (Tr. 138-52.) The ALJ determined that Plaintiff should have known better than to continue accepting payments or should have done additional research to determine at what level of income he should have stopped accepting payments. (Tr. 16.) Plaintiff argues that the ALJ failed to take into account his mental and intellectual limitations in determining that he was not without fault and that Plaintiff's ability to pursue his eligibility was affected by his limitations. (Pl.'s Mem. at 5.)

### 1. Plaintiff's mental and intellectual limitations

Plaintiff argues that the ALJ erred in concluding that Plaintiff was not without fault by failing to take into account Plaintiff's intellectual and mental limitations. (Pl.'s Mem. at 5.) Specifically, Plaintiff challenges the ALJ's determination that Plaintiff should have known he was accepting overpayments and should have done a better job communicating with the Agency. (Pl.'s Mem. at 5.)

The regulations require that individuals receiving disability payments report their earnings. 20 C.F.R. § 404.452. Fault includes the "[f]ailure to furnish information which [the overpaid individual] knew or should have known to be material." 20 C.F.R. § 404.507(b); *Sipp v. Astrue*, 641 F.3d 975, 981 (8th Cir. 2011). This Court is not persuaded that Plaintiff was not in a position to know about the earnings cap on account of his intellectual limitations. The record contains substantial evidence supporting the ALJ's determination that Plaintiff was not impeded by his mental impairments when

communicating with the Agency. (Tr. 16.) The evidence in the record shows that Plaintiff tried to keep up with the required paperwork. (Tr. 141-43.) Plaintiff testified that he informed the Agency when he had a job and provided pay stubs and other income evidence. (Tr. 141-43.) Plaintiff also testified that his stepfather helped him with the paperwork. (Tr. 143.) Plaintiff demonstrated his awareness of the materiality of his income by continuing to report his income to the Agency. In his memorandum, Plaintiff indeed concedes that he was working and was aware that he was required to report employment information to the Agency. (Pl.'s Mem. at 6.)

In addition, Plaintiff testified that when he brought his pay stubs to the Agency, he was told that his income was too high and that when a person's income was too high, benefits would end. (Tr. 141.) But, there is no evidence, other than Plaintiff's own testimony, to prove that Plaintiff contacted the Commissioner any time before July 2008 when he was informed that he had been overpaid benefits. (Tr. 142.) Plaintiff was unable to provide the dates of his visits to the Agency, the names of the individuals he spoke to, or copies of the paperwork provided. (Tr. 142.) This Court concludes that the record contains substantial evidence to support the ALJ's determination that, while Plaintiff did question the amount he could earn before he was no longer entitled to benefits, Plaintiff's failure to pursue the matter further was a direct cause of the overpayment. (Tr. 16.)

### 2. Plaintiff's ability to pursue diligently his eligibility

Plaintiff also argues that his ability to pursue his eligibility was affected by his mental incapacities. (Pl.'s Mem. at 5.) The Court does not find this argument persuasive

because the record contains substantial evidence showing that Plaintiff had sufficient mental capacity to know or should have known what was expected of him.

At the time of his substantial gainful employment, Plaintiff was not impeded by an emotional incapacity. The records from the follow-up visits to Dr. Glick from 2000 to 2005 indicate an improvement in his emotional condition. (Tr. 88-100.) Plaintiff continuously reported that he was doing "fine" or "ok" and Dr. Glick opined that Plaintiff's depression was in remission. (Tr. 88-100.)

Plaintiff was also not impeded by his level of intelligence. Work experience and responsibilities given to the individual at work may be used as evidence of his or her intellectual ability. 20 C.F.R. § 404.1564. Plaintiff held a job from 2005 to 2008 and was promoted several times. (Tr. 121-22.) At the time he was notified of the overpayment, he worked in a supervisory capacity. (Tr. 122.)

Furthermore, other events during this period demonstrate Plaintiff's ability to understand the importance of obligations. Plaintiff purchased a home in 2002. (Tr. 93.) There is no indication that he was behind in mortgage payments or unaware that he did not have to keep up with payments. (Tr. 93.) Because the ALJ's conclusion that Plaintiff is not without fault for the overpayment of benefits is supported by substantial evidence, recovery of the overpayment need not be waived.

## IV. RECOMMENDATION

Based upon the record and memoranda, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Docket No. 17) be **DENIED** and Commissioner's Motion for Summary Judgment (Docket No. 20) be **GRANTED**.

Date: October 12, 2012

                                            s/ *Tony N. Leung*
                                  Magistrate Judge Tony N. Leung
                                  United States District Court

                                  *Hooey v. Astrue*
                                  File No. 11-cv-20805

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before October 29, 2012.